IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF TEXAS
                          FORT WORTH DIVISION

FELINE INSTINCTS, LLC            §
                                 §
VS.                              §   CIVIL ACTION NO.: 4:09-CV-644-Y
                                 §
FELINE FUTURE CAT FOOD           §
COMPANY, INC.                    §

                        ORDER DENYING MOTION TO
                 DISMISS AND, ALTERNATIVELY, TO TRANSFER

Before the Court is the motion to dismiss and, alternatively, to transfer (doc. 59) filed by defendant Know Bones Pet Supply, LLC ("Know Bones"). After review, the Court concludes that Know Bones is subject to the personal jurisdiction of this Court, that venue is proper and convenient in this Court, and that service of process on Know Bones was not insufficient. Therefore, the Court will deny Know Bones's motion.

I. Background

Plaintiff Feline Instincts, LLC ("Instincts"), filed this suit against Feline Future Cat Food Company, Inc. ("Future"), a Canadian company, alleging trademark infringement and dilution. Specifically, Instincts alleges that both it and Future are pet-food manufacturers and that Future's use of internet domain names containing the terms "feline instincts" and "cat instincts" has confused consumers regarding the relationship between the two

companies and their products.[1]

Know Bones, Future's exclusive manufacturer and distributor in the United States, was joined as a defendant in this case on May 20, 2010. Know Bones is an Oregon limited liability company that manufactures, packages, and distributes pet-food products pursuant to the orders of certain pet-food wholesalers and retailers. One of the states to which Know Bones distributes pet-food products is Texas. Shortly after being joined in this suit, Know Bones filed the instant motion seeking to dismiss Instincts's claims against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), improper venue under Rule 12(b)(3), and insufficient service of process under Rule 12(b)(5).

II. Discussion

    A. Personal Jurisdiction

        1. Legal Standards

"On a motion to dismiss for lack of personal jurisdiction, the plaintiff rather than the movant has the burden of proof." *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982). "The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt*,

---

[1] On October 20, 2010, the Court entered an order staying these proceedings as to Future (doc. 116).

686 F.2d at 280). "To decide whether a *prima facie* case exists, [the court] must accept as true [the plaintiff's] 'uncontroverted allegations, and resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation.'" *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000)).

The Due Process Clause of the Fourteenth Amendment precludes a federal court from assuming personal jurisdiction over a non-resident defendant "unless the defendant has meaningful 'contacts, ties, or relations' with the forum state." *Luv N' Care*, 438 F.3d at 469 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Such contacts can give rise to two types of personal jurisdiction: specific and general. *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010). General jurisdiction exists "[w]here a defendant has 'continuous and systematic general business contacts' with the forum state." *Id.* (citing *Luv N' Care*, 438 F.3d 465). When a court has general jurisdiction over a defendant, it may exercise personal jurisdiction "over any action brought against that defendant." *Id.*

"Where contacts are less pervasive, the court may still exercise 'specific' jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'" *Luv N' Care*,

438 F.3d at 469 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). This type of jurisdiction requires that "the defendant ha[ve] 'minimum contacts' with the forum state such that imposing a judgment would not 'offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe*, 326 U.S. at 316). The Fifth Circuit has reduced this inquiry into a three-step analysis:

> (1) whether the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Id.* (quoting *Nuovo Pignone*, 310 F.3d at 378).

In addition to meeting due-process requirements, a federal court's exercise of personal jurisdiction must satisfy the requirements of the forum state's "long-arm" statute. *See id.* Texas's long-arm statute, however, is coextensive with the Due Process Clause. *Clemons v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). Thus, the sole jurisdictional issue in the instant case is whether an assertion by this Court of personal jurisdiction over Know Bones is consistent with due process.

### 2. Personal Jurisdiction Over Know Bones

Know Bones contends that it is not subject to the jurisdiction of this Court because it lacks the requisite minimum contacts with the state of Texas. Know Bones adamantly points out that "it does

4

not offer any products for sale to retail or wholesale customers [in Texas], nor does it sell any products." (Mot. Dismiss 2.) Moreover, according to Know Bones, the fact that it ships pet-food products to Texas is inconsequential because it simply does so "as directed by its upstream clients, who sell the products to retail outlets and the public at large." (*Id.*)

In response, Instincts contends, among other things, that Know Bones's distribution of products to Texas is itself a sufficient basis for specific jurisdiction. To support this contention, Instincts cites *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006), a suit between a Louisiana-based corporation and a Colorado corporation for copyright infringement, trademark dilution, and unfair competition. The Colorado defendant had no employees nor an agent for service in Louisiana, and it conducted no direct sales or marketing there. *Luv N' Care*, 438 F.3d at 468. Its only contact with Louisiana was its sales of items to Wal-Mart, who assigned third-party carriers to ship the defendant's product from Colorado to Louisiana. On these facts, the United States Court of Appeals for the Fifth Circuit held that the Louisiana district court had personal jurisdiction over the Colorado corporation. *Id.* According to the Fifth Circuit, the defendant "purposely availed itself of the benefit of the Louisiana market for its [product], thereby establishing 'minimum contacts' with the forum state." *Id.* at 472. Additionally, the Fifth Circuit

determined that the plaintiff's infringement claims arose out of those minimum contacts and that the Louisiana district court's exercise of personal jurisdiction over the defendant did not offend notions of fair play and substantial justice. *Id.* at 473-74.

In the instant case, Know Bones's contacts with Texas are just as strong as the *Luv N' Care* defendant's contacts with Louisiana. The *Luv N' Care* defendant never shipped its products directly to Louisiana. Rather, its only connection to Louisiana was through its sales to Wal-Mart. Here, Know Bones manufactures pet-food products and then itself ships them to Texas. While Know Bones may not have sold or marketed any products to Texas, it has worked closely with Future, which did. Moreover, even without this connection to Future, the fact that Know Bones manufactures products and then distributes them to Texas means that Know Bones benefits financially from the Texas market--even if Know Bones does not market the products in Texas or secure the sales here. Know Bones, in other words, both "purposely directed its activities toward the forum state" and "purposely availed itself of the privileges of conducting activities [here]." *Nuovo Pignone*, 310 F.3d at 378. This is sufficient to establish the minimum contacts that Due Process requires for an assumption of jurisdiction.

Moreover, not only does Know Bones have minimum contacts with Texas, Instincts's claims for trademark infringement and dilution arise out of those contacts. Know Bones is responsible for the

6

manufacture and distribution of pet-food products that allegedly infringe upon and dilute marks held by Instincts.[2] While the Fifth Circuit "has been reluctant to extend the stream-of-commerce principle outside the context of products liability cases," it has "found jurisdiction where 'the same public policy concerns that justify use of the stream-of-commerce principle in the products liability context are present.'" *Luv N' Care*, 438 F.3d at 472-73 (quoting *Nuovo Pignone*, 310 F.3d at 381). The *Luv N' Care* court determined that such policy concerns were present in the infringement and dilution action before it and concluded that the "connection between the allegedly infringing product and the forum state [was] sufficient to confer personal jurisdiction." *Id.* at 473. Likewise, this Court concludes that Instincts's claims of trademark infringement and dilution arise out of Know Bones's manufacture and distribution of pet-food products to Texas and are, therefore, sufficiently connected with Texas to support personal jurisdiction.

Finally, now that the Court has determined that Know Bones has minimum contacts with Texas and that Instincts's's claims arise out of those contacts, the Court must assess whether exercising

---

[2] Instincts alleges not only that Know Bones has distributed products to Texas and availed itself of the Texas market, but that Know Bones has done so in the Northern District of Texas, specifically. Thus, in this case, Know Bones is not simply subject to personal jurisdiction in Texas, generally, but also in the Northern District of Texas. As the Court will explain, this determination is important to the Court's venue analysis under 28 U.S.C. § 1391(c). *See infra* Part B.

jurisdiction over Know Bones would nevertheless "offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe*, 326 U.S. at 316). As previously explained, Know Bones benefits from being able to manufacture products and distribute them to Texas, even if it does so pursuant to the wishes of its retail and wholesale clients. Know Bones cannot, in fairness, avail itself of the benefits of distributing products to the Texas market and then contend that subjecting it to a lawsuit in Texas involving those products is unjust. Given Know Bones's purposeful activities in the state of Texas and the connection between those activities and Feline Instincts's claims, the Court concludes that assuming personal jurisdiction over Know Bones would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

B. Venue

1. Legal Standards

A plaintiff faced with a Rule 12(b)(3) motion has the burden of proving that its chosen venue is proper. *See Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 753 (S.D. Tex. 2002); *McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001); *E.E.O.C. v. Mustang Mobile Homes, Inc.*, 88 F. Supp. 2d 722, 724 (W.D. Tex. 1999); 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3826, at 555-56 (3d ed. 2007). *But see Tex. Marine & Brokerage, Inc. v. Euton*, 120

F. Supp. 2d 611, 612 (E.D. Tex. 2000). "A proper venue is established in a particular district so long as 'substantial' activities took place in that district . . . ." *Terra Nova Sciences, LLC v. JOA Oil and Gas Hous.*, No. H-10-844, 2010 WL 2671584, at *3 (S.D. Tex. June 30, 2010) (citation omitted). "[T]he court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Id.* (citing *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007)). Moreoever, "[t]o prevail on a motion to dismiss for improper venue, a defendant must present facts that will defeat a plaintiff's assertion of venue." *Id.* (citing *Braspetro*, 240 F. App'x at 615).

But even "when venue is proper in a given district, a court may transfer the case [under § 28 U.S.C. 1404(a)] to another appropriate forum 'for the convenience of parties and witnesses, in the interest of justice.'" *Id.* at *4 (quoting 28 U.S.C.A. § 1404(a) (West 2010)). "The burden falls upon the movant to demonstrate why the alternate venue is more appropriate." *Cypress/Spanish Fort I, L.P. v. Prof'l Serv. Indus., Inc.*, No. 3:10-CV-1507-B, 2010 WL 3766882, at *1 (N.D. Tex. 2010) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008)). In reviewing whether this burden has been met, the court must make a two-step inquiry. *Terra Nova*, 2010 WL 2671584, at *4. "First, the court must determine if the transferee court, as specified by the movant,

is one in which the case originally could have been brought." *Id.* Second, "the defendant must show good cause as to why the action should be sent to the transferee venue." *Cypress*, 2010 WL 3766882, at *1 (citing *In re Volkswagen*, 545 F.3d at 315). Showing good cause requires that the movant "clearly demonstrate that a transfer is 'for the convenience of parties and witnesses, and in the interest of justice.'" *Id.* (quoting *In re Volkswagen*, 545 F.3d at 315).

When evaluating the interests of convenience and justice, courts consider a number of private and public factors. *Id.* (citing *In re Volkswagen*, 545 F.3d at 315). The private factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen*, 545 F.3d at 315. Among the public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws . . . ." *In re Volkswagen*, 545 F.3d at 315-16. "The balance of these factors must clearly weigh in favor of transferring to the new venue. If the transferee venue 'is no more convenient than the chosen venue, the

plaintiff's choice should not be disturbed." *Cypress*, 2010 WL 3766882, at *2 (quoting *Thomas v. City of Fort Worth*, 2008 WL 4225556, at * 2 (N.D. Tex. Sept. 15, 2008)).

   2. The Northern District of Texas as a Proper Venue

Instincts asserts that venue is proper because a substantial part of the events underlying its claims for trademark infringement and dilution occurred in the Northern District of Texas. In particular, Instincts alleges that Know Bones has distributed infringing products to this district and that consumers in this district have become confused as to the relation between Instincts and Future. Therefore, because "a substantial part of the events or omissions giving rise to the claim occurred" in the Northern District of Texas, venue is proper in this Court under 28 U.S.C. § 1391(b). *See* 28 U.S.C.A. § 1391(b).

Additionally, venue appears proper under § 1391(c), which states, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). "When a corporate defendant is subject to personal jurisdiction in a multidistrict state such as Texas, that corporation resides 'in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.'" *Nayani v. Horseshoe Entm't*, 2007 WL 1062561, at *8 (N.D. Tex. Apr. 10, 2007) (quoting

28 U.S.C.A. § 1391(c)). And "[a]lthough the wording of section 1391(c) only appears to apply to corporations, courts have held and it is generally accepted that unincorporated business associations such as partnerships and limited liability companies are analogous to corporations for venue purposes." *Advocate Financial, L.L.C. v. Parker Interests, L.L.C.*, No. 07-757-FJP-CN, 2008 WL 2773650, at *1 (M.D. La. July 16, 2008); *see also Nayani*, 2007 WL 1062561, at *8. Therefore, given that Know Bones is subject to personal jurisdiction in the state of Texas and, specifically, in the Northern District, the Court concludes that venue is proper under 28 U.S.C. § 1391(c), as well as § 1391(b).

The question remains, however, whether the Court should transfer this action to the United States District Court for the District of Oregon on grounds that it is a more convenient forum under 28 U.S.C. § 1404(a). As previously explained, Know Bones, as movant, bears the burden on this issue. Know Bones argues that the District of Oregon, where Know Bones actually packaged and manufactured the products, is a more convenient forum than the Northern District of Texas, where the products were eventually distributed. However, Know Bones merely explains why the Oregon District is a more convenient forum for Know Bones. Know Bones does not explain why it is the more convenient forum as a whole, in light of the *In re Volkswagen* factors. *In re Volkswagen*, 545 F.3d at 315-16. Know Bones does not explain, for example, how private

factors like "ease of access or sources of proof" or "cost of attendance for willing witnesses" cut in favor of the Oregon forum. *Id.* at 315.  Nor does Know Bones discuss any public factors such as "the familiarity of the forum with the law that will govern the case" or "the administrative difficulties flowing from court congestion." *Id.* at 315-16.  "[T]he court may not transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *TGI Friday's Inc. v. Great Nw. Rest., Inc.*, 652 F. Supp. 2d 750, 761 (N.D. Tex. 2009).  After consideration of the motion to transfer, the Court concludes that Know Bones has simply failed to show that the District of Oregon is the more appropriate forum based upon "the convenience of the parties and witnesses" and "the interests of justice."  28 U.S.C.A. § 1404(a).

    C.   Service of Process

Know Bones next contends that Instincts failed to effect adequate service of process on Know Bones and, therefore, Instincts's claims should be dismissed under Rule 12(b)(5).  "A motion to dismiss pursuant to Rule 12(b)(5) turns on the legal sufficiency of the service of process.  The party making service has the burden of demonstrating its validity when an objection to service is made." *Holly v. Metropolitan Transit Auth.*, 213 F. App'x 343, 344 (5th Cir. 2007) (citing *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)).

13

Rule 4(h) sets out the acceptable methods for serving a limited liability company ("LLC"), such as Know Bones. *See* Fed. R. Civ. P. 4(h). Under Rule 4(h)(1)(B), a plaintiff may serve an LLC by delivering a copy of the summons and complaint to an officer or agent of the LCC and--"if the agent is one authorized by statute and the statute so requires"--by mailing a copy of the complaint and summons. Fed. R. Civ. P. 4(h)(1)(B). Alternatively, under Rule 4(h)(1)(A), a plaintiff may serve an LLC "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1), in turn, allows for service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made ." Fed. R. Civ. P. 4(e)(1).

Know Bones makes two arguments in support of its assertion that Instincts provided insufficient service of process. First, Know Bones contends that Instincts failed to hand deliver the summons and complaint in accordance with Rule 4(h)(B). Instincts does not seem to quarrel with this point. Second, Know Bones contends that Instincts failed to comply with the requirements of service of process under Texas law. Once again, Instincts does not dispute Know Bones's assertion.

Instead, Instincts contends that, despite the aforementioned failures, its service of Know Bones was nevertheless sufficient

14

because it complied with the requirements of Oregon law. Rule 4(e)(1), by way of Rule 4(h)(1)(A), provides for service of process in accordance with the law of the state "in courts of general jurisdiction in the state where the district court is located," which in this case would be Texas, or in the state "where service is made," which would be Oregon. Thus, even if improper under Texas law, Instincts's service of process on Know Bones is proper so long as it is complies with Oregon law.

Instincts indicates that it served Know Bones with a copy of the summons and complaint via express mail and first-class mail and filed proof of such service on September 19, 2010 (doc. 56). Oregon Rule of Civil Procedure 7D(3)(c)(ii) permits service by mail on an LLC if the LLC's agents, managers, or members "cannot be found in the county where the action is filed." While this provision likely contemplates a situation where suit was filed in Oregon, by its terms, it allows for service by mail in the instant case because no representative of Know Bones could be found in the county--or, indeed, in the state--where the action was filed.

Even if service by mail in this case is not specifically authorized by 7D(3)(c)(ii), however, it remains an effective method for service so long as "the manner of service employed by [Instincts] satisf[ies] the 'reasonable notice' standard of adequate service set forth in 7D(1)." *Baker v. Foy*, 797 P.2d 349, 354-55 (Or. 1990). Oregon Rule 7D(1) states, "[s]ummons shall be

15

served . . . in any manner reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend." Or. R. Civ. P. 7D(1). Additionally, it indicates that "[s]ervice may be made, subject to the restrictions and requirements of this rule, . . . by mail." *Id.* Given the geographical distance between the parties, personal delivery of the summons and complaint would have come at great expense to Instincts. In addition, Instincts appears to have tracked the status of the mailed summons and informed Know Bones's counsel by email. In light of Instincts's diligence in securing Know Bones's actual notice of the lawsuit and the reliable method that Instincts employed, the Court is persuaded that Instincts's service of process on Know Bones was "reasonably calculated" to apprise Know Bones of the lawsuit and afford it an opportunity to defend the suit. Thus, Instincts's service of process was consistent with Oregon law and, therefore, Federal Rule 4(h)(1)(A). Know Bones's challenge to the sufficiency of service of process in this case is without merit.

III. Conclusion

Based on the foregoing, the Court concludes that Know Bones is subject to personal jurisdiction in this Court, that venue is proper and convenient in this Court, and that Instincts's service

of process on Know Bones was sufficient.  Accordingly, the Court
DENIES Know Bones's motion to dismiss and, in the alternative, to
transfer.

SIGNED December 6, 2010.

*[signature: Terry R. Means]*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE